NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KEVIN FRANCIS,

          Plaintiff,

   v.

CITY OF NEWARK, *et al.*

          Defendants.

Civil Case No. 09-3449 (FSH) (PS)

**OPINION & ORDER**

March 29, 2011

**HOCHBERG, District Judge**:

**I.    INTRODUCTION**

    Plaintiff brings this action under 42 U.S.C. §§ 1983, 1985, and 1986. Accordingly, this Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331. Plaintiff is an African American teenage male, whose complaint alleges that he was detained and assaulted by two police officers employed by the City of Newark ("Newark"), Antonio Tavarez and Anthony Matos. The complaint names Newark and the following members of the Newark Police Department as defendants: lieutenant Darrin Marasco, officer Anthony Matos, and lieutenant Adolph Vasquez.[1] The complaint contains 19 counts. Counts 1-5 are federal civil rights claims. Counts 6-19 are state statutory and common law claims.

---

[1] Officer Tavarez, was named in the complaint, but was never served. The claims against Tavarez were dismissed under Rule 4(m).

Defendants Newark and Darrin Marasco now move for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).[2] Newark and Marasco argue that summary judgment is appropriate on three principal grounds: 1) the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:9-2(d), bars plaintiff from recovering pain and suffering damages for the claims asserted in counts 6-18 of the complaint; 2) the civil rights claims against Newark fail because it is a municipality and may not be held liable by plaintiff unless plaintiff's injuries were caused by a custom, policy, or deficient training by Newark; and (3) Officer Marasco did not engage in a conspiracy to violate plaintiff's civil rights.

## II.   BACKGROUND

The parties agree that on July 17, 2007, plaintiff was stopped and detained by officers Tavares and Matos. Plaintiff is African-American and was 13 years old at the time. Although the parties agree that plaintiff was detained by Tavarez and Matos, they have provided sharply conflicting accounts of the events that took place after the detention.

According to plaintiff's testimony, after he was detained, Tavarez and Matos put him into the back of their car and drove around with him for a period of time. During the drive, plaintiff claims Tavarez and Matos attempted to coerce plaintiff into admitting to a crime he did not commit by threatening to beat him and to throw him off a bridge if he did not admit to criminal activity. According to plaintiff, Tavarez and Matos then took plaintiff to see their supervising officer, who told Tavarez and Matos to take plaintiff home. Plaintiff testified that instead of taking him home, Tavarez and Matos took him to a secluded location and told him to urinate on himself. Plaintiff claims that after he refused to do so, one officer held plaintiff while the other

---

[2] Officer Matos and lieutenant Vasquez did not join in the motion for summary judgment.

2

struck him repeatedly in the stomach with his fist and a baton. Plaintiff contends that he then fell to the ground, at which time one of the officers urinated on him. Plaintiff testified that the officers then ordered plaintiff to stay where he was and left the secluded location.

Defendants do not contest that plaintiff was detained, or that he was taken to see a supervisory officer. However, they deny that plaintiff was threatened, beaten, urinated upon, or left in a secluded location. Officer Matos testified that he and his partner, officer Tavarez, stopped plaintiff in response to a dispatch call concerning a robbery. According to Matos, plaintiff was placed in the officers' car for questioning regarding the robbery. Matos testified that he and Tavarez kept plaintiff in their car while canvassing the area and then stopped the car so that plaintiff could be questioned by a detective. During the questioning, both the detective and lieutenant Adolph Vasquez were present. According to defendants, after the detective had questioned plaintiff, Matos and Tavarez dropped plaintiff off at Penn Station.

On or about July 24, 2007, plaintiff filed an internal affairs complaint with the Newark Police Department regarding the incident. The complaint was investigated by defendant Marasco. The investigation did not sustain plaintiff's complaint, but did conclude that the officers should not have dropped plaintiff off anywhere because plaintiff was a juvenile in violation of the Newark curfew ordinance. The investigation therefore recommended a police trial of Matos and Tavarez for failing to enforce the curfew ordinance against plaintiff by taking him in to be processed for violating the curfew ordinance.

In connection with the investigation, plaintiff provided the police department with the tee shirt he was wearing the night of the incident for a DNA analysis. According to a laboratory report generated in connection with the police department internal affairs investigation, no

3

metabolic waste products excreted in urine were found on the tee shirt provided by plaintiff. Plaintiff responds to the laboratory report by questioning whether the tee shirt analyzed in the report is the tee shirt provided by plaintiff. Plaintiff specifically contends that Marasco did not log the brand name of the tee shirt provided by plaintiff. Further, although plaintiff's attorney requested the return of the tee shirt, plaintiff contends that it was not returned and appears to be missing. Plaintiff observes that Marasco previously served as the supervisor of defendant Matos and suggests that Marasco destroyed the tee shirt provided to the police department by plaintiff and provided a dummy tee shirt to the laboratory for analysis. Defendants deny that Marasco destroyed the tee shirt and provided a dummy tee shirt to the laboratory.

## III.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, "summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994). The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors

could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 860 (3d Cir. 1990).

The party seeking summary judgment always bears the initial burden of production. *Celotex*, 477 U.S. at 323. This burden requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322-23. This burden can be "discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party.

To avoid summary judgment, the nonmoving party must then demonstrate facts supporting each element for which it bears the burden, thus establishing the existence of a "genuine issue of material fact" justifying trial. *Miller*, 843 F.2d at 143; *accord Celotex*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

IV.   **DISCUSSION**

  A.   **The New Jersey Tort Claims Act**

Counts 6-18 of the complaint assert claims under New Jersey state law. Newark and Marasco contend that the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:9-2(d) ("TCA"),[3] bars plaintiff from recovering pain and suffering damages under any of those counts. The TCA prohibits claims for pain and suffering damages against public entities for pain and suffering resulting from injury except "in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600." N.J. Stat. Ann. § 59:9-2(d). Notably, the statute does not "exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." N.J. Stat. Ann. § 59:3-14. However, it does provide that a public entity "is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J. Stat. Ann. § 59:2-10.

    i.    The City of Newark

Under § 59:9-2(d) of the TCA, Newark is immune from liability for pain and suffering damages because it is a public entity. Newark is not liable for pain and suffering damages caused by the alleged acts of the individual officers because, if proven true, the allegations would establish acts or omissions constituting, *inter alia*, willful misconduct by public employees. *See* N.J. Stat. Ann. § 59:2-10 ("A public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct."). Accordingly, the TCA bars the recovery of pain and suffering damages from Newark based on

---

[3]Count 19 of the complaint also asserts a state law claim, specifically, a claim for violation of the New Jersey Civil Rights Act. However, the TCA does not apply to claims under that act. *See Owens v. Feigin*, 194 N.J. 607, 613 (N.J. 2008).

counts 6-18 of the complaint. Plaintiff has not contested this argument in his responsive motion papers. Accordingly, Newark's motion is unopposed regarding counts 6-18 of the complaint. *See Green v. Essex County Superior Court Clerk*, No. 02-1872, 2006 U.S. Dist. LEXIS 22151, at *1 n.1 (D.N.J. April 6, 2006).[4]

    ii.    <u>Lieutenant Marasco</u>

Plaintiff's complaint inartfully demands judgment against "Defendants" for all counts.[5] However, a certification filed by plaintiff in support of a motion for leave to amend his original complaint to, *inter alia*, add Marasco as a party, indicates that Marasco was added as a defendant because he "conspired with the Defendants to violate [plaintiff's] Civil Rights" and "violated Plaintiff's rights under the New Jersey Civil Rights Act of 2004." *See* Docket No. 12, at 4. The certification, read together with plaintiff's brief in opposition to the summary judgment motion, establishes that plaintiff names Marasco as a defendant only in connection with plaintiff's conspiracy claims regarding civil rights. Those claims are contained in counts are 4, 5, and 19 of

---

[4] It appears to the Court that the gravamen of plaintiff's case is that the individual officers engaged in willful misconduct, and that as a result, § 59:2-10 of the TCA would bar plaintiff from recovering damages of any kind from Newark based on counts 6-18 of the complaint. If Newark chooses to file a supplemental submission in response to footnote 6 of this opinion, it may include arguments specific to § 59:2-10 in that submission.

[5] Where a complaint names multiple defendants, each defendant is entitled to notice regarding which claims are asserted against them. Accordingly, it is inappropriate to refer generically to "Defendants" unless each cause of action in a complaint is actually asserted against all defendants. Moreover, plaintiff's brief is utterly inadequate, failing to address many issues in its 7 pages of analysis, and failing to distinguish between the roles of the individual officers. Indeed, the TCA discussion in plaintiff's brief appears to relate to officer Matos, who did not move for summary judgment. The exceptionally sloppy briefing of this motion caused the Court to devote an inordinate amount of time to determining the position of each party. <u>In every brief, motion or filing of any kind hereafter, all attorneys in this case shall meet professionalism standards</u>. This shall constitute notice that sanctions will be imposed for any repetition of this conduct.

the complaint. Accordingly, Marasco is named as a defendant only in counts 4, 5, and 19 of the complaint, which allege violations of plaintiff's civil rights. The TCA does not apply to any of these claims. *See Owens v. Feigin*, 194 N.J. 607, 613 (N.J. 2008) (concluding that the protection of constitutional rights "has never depended on the satisfaction of the TCA's procedural and substantive requirements"). Accordingly, plaintiff is not barred by the TCA from recovering pain and suffering damages arising out of his claims against Marasco.

      **B.      Plaintiff's Civil Rights Claims**

Plaintiff's civil rights claims are contained in counts 1-5 and 19 of the complaint. All of these counts are asserted against Newark, while only counts 4, 5, and 19 are asserted against lieutenant Marasco. The briefs of the parties do not specifically address count 19 of the amended complaint, which contains plaintiff's claims under the New Jersey Civil Rights Act ("NJCRA"). The Court presumes that Newark and Marasco intended to address count 19 in their motion for summary judgment, but because they did not so state, the Court will not address count 19 at this time.[6]

---

[6] The moving papers submitted by Newark and Marasco address every count except for count 19, which was added to the complaint when it was amended to add Marasco as a defendant. Although the moving papers do not expressly address count 19, the Court notes that the NJCRA and § 1983 are construed in nearly identical terms and that courts in this district have applied the same standards to claims under the NJCRA and claims of constitutional violations brought pursuant to § 1983. *See e.g. Martin v. Monroe Twp.*, No. 10-3628, 2011 U.S. Dist. LEXIS 6996, at *11-15 (D.N.J. Jan. 25, 2011); *Hudgon v. LaFleur*, No. 07-3626, 2010 U.S. Dist. LEXIS 73964, at *20-21 n.6 (D.N.J. July 22, 2010). Accordingly, the Court is inclined to believe that Newark and Marasco intended to include count 19 in their motion for summary judgment. However, the Court would require verification from Newark and Marasco that they intended to include count 19 before it could properly address that count. If the failure to include a reference to count 19 by Newark and Marasco is claimed to be excusable neglect, a motion, supported by a brief and certification meeting the standard for excusable neglect shall be filed no later than April 15, 2011. The response shall be filed by April 25, 2011, and the reply by May 2, 2011.

      i.      The City of Newark

The Amended Complaint appears to posit three basic theories under which Newark could be liable for plaintiff's federal civil rights claims. The plaintiff's three theories are: (1) *respondeat superior*, (2) that it is the policy and practice of Newark to allow certain officers to use excessive force when arresting minority youth, and (3) that Newark has failed to adequately train and supervise defendant police officers. Newark argues that it is not liable under any of these theories.

Plaintiff's brief in response to the motion for summary judgment contains a mere 7 pages of legal analysis and fails to oppose most of the arguments raised by Newark in its moving papers. In Point II of the brief in support of the motion for summary judgment, Newark argues that "a local government may not be held liable for constitutional violations solely upon the basis of *respondeat superior*." Newark goes on to argue that Plaintiff has adduced "no evidence to establish that a custom or policy of the City of Newark resulted in the plaintiff's constitutional rights being violated." Finally, in Point III, Newark contends that "plaintiff has presented no evidence to show that the individual named defendant officers' actions resulted from the city of Newark's 'deliberately indifferent failure to train its officers.'"

Plaintiff's opposition brief does not state a single word in opposition to these "*Monell*" theories. Plaintiff's factual submissions pursuant to Local Civil Rule 56.1 also do not set forth a scintilla of evidence adduced in this case to establish that any custom, policy, or deficient training by Newark related to any actions taken by the individual defendants in this case. Accordingly, Newark's motion stands unopposed regarding plaintiff's claims against Newark. *See Anchorage Assoc. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 174-175 (3d Cir. 1990)

(concluding that where a motion for summary judgment is unopposed, and the moving party does not bear the burden of proof on an issue, a district court need only determine whether "the deficiencies in the opponent's evidence . . . in connection with the motion entitle the moving party to judgment as a matter of law.").

Newark first contends that it is not liable for plaintiff's federal civil rights claims under the theory of *respondeat superior*. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) ("A municipality may not be held liable under § 1983 for the constitutional torts of its employees by virtue of *respondeat superior*. Rather, a municipality may be held liable for the conduct of an individual employee or officer only when that conduct implements an official policy or practice.") (*citing Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978)). Plaintiff's brief stated no opposition to this argument.[7]

Newark also moves for summary judgment on the grounds that plaintiff has not adduced sufficient evidence from which a rational trier of fact could conclude that Newark has a custom or policy of allowing officers to use excessive force when arresting minority youth. Plaintiff did not contest this argument with a single factual or legal argument in his entire brief. Thus, plaintiff has failed to adduce any evidence of "the existence of a policy or custom that has resulted in a constitutional violation." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995). Similarly, plaintiff has failed to "demonstrate that the policy or custom was the moving

---

[7] What plaintiff has done is argue why Matos and Marasco should not be shielded from pain and suffering damages by the TCA because their actions, if proven, would constitute willful misconduct. Defendant Matos has not moved for summary judgment and thus there is no issue raised with respect to Matos. Marasco has moved for summary judgment, but as explained in Section IV.A.ii., is not named in any counts to which the TCA could apply. Thus, a significant portion of plaintiff's brief was addressed to a motion that was not made by Matos. At the same time, plaintiff did not address in any way significant aspects of the motion made by Newark.

force behind the unconstitutional act." *Combs v. School Dist. of Phila.*, No. 99-3812, 2000 U.S. Dist. LEXIS 15682, at *11 (E. D. Pa. Oct 26, 2000) (quotations omitted).

Finally, Newark moves for summary judgment on the grounds that plaintiff has presented no evidence suggesting that Newark failed to train its police officers, or linking any such failure to any actions taken by defendant officers. *See Canton v. Harris*, 489 U.S. 378, 388 (1988). Plaintiff did not offer any factual or legal arguments opposing Newark's motion for summary judgment in this regard. Accordingly, plaintiff has not adduced any evidence that Newark has failed to train its police officers, that deficient training by Newark was closely related to the injury allegedly suffered by plaintiff, or that deficiencies in Newark's training program amounted "to deliberate indifference to the rights of persons with whom the police come into contact." *Id*. at 388, 391.

Accordingly, for the reasons discussed above, Newark is entitled to summary judgment with respect to counts 1-5 of the complaint.

ii. <u>Lieutenant Marasco</u>

Plaintiff contends that Marasco conspired with Matos and Alvarez to deny plaintiff equal protection of the laws, in violation of 42 U.S.C. § 1985(3). In order to establish a § 1985(3) violation, a plaintiff must show: (1) a conspiracy, (2) motivated by a racial or class based discriminatory animus designed to deprive any person of the equal protection of the laws or equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, and (4) that the plaintiff was injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). "The conspiracy element of § 1985(3) requires a

11

combination of two or more persons acting in concert to commit an unlawful act . . . the principal element of which is an agreement between the parties to inflict a wrong against or injury upon [plaintiff] and an overt act that results in that damage." *Russo v. Voorhees Twp.*, 403 F. Supp. 2d 352, 359 (D.N.J. 2005) (quotations omitted).

Plaintiff contends that there is a genuine issue of material fact regarding whether Marasco conspired with Matos, motivated by a racial or class based discriminatory animus, to interfere with the internal police investigation of plaintiff's allegations by destroying plaintiff's tee shirt and providing a different tee shirt for laboratory analysis. In support of this theory, plaintiff notes that: (1) plaintiff is an African-American male, (2) Marasco previously served as the supervisor of Matos, (3) despite this previous relationship, Marasco conducted the internal affairs investigation instead of having it reassigned, (4) Marasco did not log any details, such as the brand name, regarding the tee shirt provided to the laboratory, and (5) the tee shirt was not returned to plaintiff's attorney and appears to have been lost or destroyed.

The primary fact supporting plaintiff's claim of conspiracy is his claim that the tee shirt he provided to Marasco was lost or destroyed. Plaintiff's attorney indicates that he requested the return of the tee shirt and he avers that it was never returned to him. Marasco testified that he received the tee shirt, took photographs of the tee shirt, and sent it to the lab by hand delivery. Declaration of Randy P. Davenport, Ex. C at 12-13. Marasco further testified that the tee shirt was returned to him after the testing was complete. *Id.* at 64-65. Marasco testified that his recollection was that he notified plaintiff's attorney that he could pick up the tee shirt when the tee shirt was returned from the laboratory. *Id*. at 14-17. Marasco indicated that he assumed the

tee shirt had been picked up, but that he had no specific recollection of anyone picking up the tee shirt. *Id.*

Marasco also testified that individuals who come to pick up property used during an investigation are required to sign a receipt indicating that the property was returned. *Id*. at 16. Marasco testified that he did not have in his possession, and had never seen, a receipt indicating that the tee shirt was picked up by anyone. *Id*. at 16-17. With respect to his relationship with Matos, Marasco testified that he was the supervisor of Matos in either 2000 or 2001 and that he had no relationship with Matos outside of their work relationship. *Id*. at 59-60. Matos was not asked regarding his relationship with Marasco. *See* Declaration of Avion Benjamin, Ex. F.

From these facts, plaintiff suggests that the previous supervisory relationship between Matos and Marasco formed a basis for Matos and Marasco to conspire to destroy the tee shirt, depriving plaintiff of the opportunity to have the tee shirt tested by his own expert. Plaintiff contends that a reasonable fact finder could conclude that Marasco destroyed the tee shirt and in turn, infer that the tee shirt would have provided evidence unfavorable to defendants. In response, Newark and Marasco emphasize the fact that Marasco was not present at the scene of the alleged incident and contend that there is insufficient evidence to conclude that Marasco was motivated to do anything based on plaintiff's race or class. Newark and Marasco also argue that there is no evidence that Marasco destroyed the tee shirt.

Although Marasco may ultimately succeed in persuading a jury that there is insufficient evidence that he conspired to violate plaintiff's civil rights as alleged in plaintiff's claims brought pursuant to 42 U.S.C. § 1985(3), at the summary judgment stage, the Court must construe all facts and inferences in the light most favorable to the non-moving party. *Peters v. Del. River*

*Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994). Further, the Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. Construing all facts and inferences in the light most favorable to plaintiff, the Court finds that plaintiff has adduced sufficient evidence in his brief and counter statement of material facts to establish that there is a disputed issue of material fact, based on the investigation conducted by Marasco, and the purportedly missing tee shirt, with respect to Marasco's actions and motives relating to plaintiff's civil conspiracy claims.

## V.    ORDER

Accordingly, it is **ORDERED** that the motion for summary judgment is granted with respect to counts 1-18 in favor of Newark. Counts 1-5 against Newark are adjudged in favor of Newark. Plaintiff is barred from recovering pain and suffering damages from Newark based on counts 6-18. Count 19 against Newark will remain for trial, unless Newark can establish excusable neglect in failing to clearly indicate that its motion included count 19.

It is **FURTHER ORDERED** that the motion for summary judgment is denied with respect to the claims in counts 4 and 5 asserted against lieutenant Marasco, and that count 19 is the only other count asserted against Marasco.

It is **FURTHER ORDERED** that all counts asserted against officer Matos and lieutenant Vasquez, who did not join in the motion for summary judgment, shall remain for trial.

/s/ Faith S. Hochberg  
Hon. Faith S. Hochberg, U.S.D.J.